IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| Leonid Goldstein,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Facebook, Inc.,<br><br>　　　　　　　Defendant. | Case No. 6:19-cv-00389-JCB-KNM |

**DEFENDANT FACEBOOK INC.'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE**

I.      INTRODUCTION

The Science for Humans and Freedom Institute, which is operated by *pro se* Plaintiff Leonid Goldstein, ran advertisements on Facebook that promoted content critical of Hezbollah. Plaintiff was apparently unperturbed to let the world know about the Institute's critical views of Hezbollah. But when Facebook later archived the advertisements in its online repository of electoral and issue-based advertising, Plaintiff cried foul and complained that the inclusion of the ads in the repository made him a target for retaliation by Hezbollah. Plaintiff does not allege that anyone from Hezbollah has ever heard of him, his Institute, or the advertisements he ran. Nonetheless, Plaintiff now sues Facebook for a grab-bag of claims—violating his civil rights, infringing his copyright, and committing acts of international terrorism. As explained in Facebook's motion to dismiss, none of these claims withstands scrutiny and nothing in Plaintiff's Opposition brief (hereinafter, "Opp'n Br.") convincingly suggests otherwise. Plaintiff's complaint should be dismissed with prejudice or, in the alternative, transferred to the United States District Court for the Northern District of California.

II.     **THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE ANY CLAIM**

    A.      **Plaintiff fails to state a claim under the Antiterrorism Act (ATA)**

In his Complaint, Plaintiff asserts that Facebook aided and abetted Hezbollah in two respects—first, by making available a set of general-purpose communication tools that happen to be used by Hezbollah; and second, by creating an Ad Library that the public—including members of Hezbollah—can search and thereby identify Facebook ads on any host of subjects—including ads concerning Hezbollah. Facebook debunked the first theory in its Motion to Dismiss, citing numerous cases that have already held, on a 12(b)(6) motion, that Facebook is not liable under the ATA for how any user may use its tools and, in any event, Facebook is not subject to liability

given the protections afforded under the Communications Decency Act, 47 U.S.C. 230(c). Plaintiff fails to defend this theory in his Opposition brief and thus appears to have abandoned it.

This leaves Plaintiff's second theory—that Facebook somehow provided Hezbollah with the ability to view content critical of it—and, by extension, the parties posting such content—when it created the Ad Library. As explained in Facebook's moving papers and as discussed further below, this theory suffers from numerous defects.

### 1. Facebook did not supply Plaintiff's private information to Hezbollah

The Complaint alleges that Facebook provided Hezbollah with Plaintiff's "private and personally identifiable information" and that this amounted to aiding a terrorist organization in the commission of an act of international terrorism. But Plaintiff's own allegations make clear that the premise of this assertion is incorrect: Facebook did not provide any of *Plaintiff's* personal information, such as his "nam[e], addres[s], and financial information." Compl. ¶12. Instead, it alleges that, at most, the Ad Library contained the name of the *Institute* and how much it spent on advertising. The Complaint concedes that Facebook did not even supply the address of the Institute or Plaintiff's affiliation with it. Rather, the Complaint concedes that such information could be gleaned by searching other sources on the Internet—namely the websites for Buzzfile and Hoovers. *See* Compl. Appendix A, Screens 7-8; Compl. ¶ 17. Plaintiff fails to respond to any of these points in his Opposition Brief, and thus tacitly concedes there is no factual predicate for his ATA claim.

### 2. Plaintiff has not been injured by an act of international terrorism, much less one proximately caused by Facebook

Plaintiff fails to identify any act of international terrorism by Hezbollah that injured him. Although he pleads that he moved to a new address and is concerned about possible retaliation by Hezbollah, he fails to tie his conduct and concern to an act of international terrorism itself,

something he must do to state a claim. This dooms Plaintiff's claim under 18 U.S.C. § 2333(a) and 18 U.S.C. § 2333(d)(2). It also means Plaintiff has not pled an injury necessary to have Article III standing.

Even if relocation and fear were cognizable injuries and even if they were in some way tied to international terrorism, Plaintiff fails to establish that Facebook proximately caused them. *See Fields v. Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018) (to establish a claim under 18 U.S.C. § 2333(a), a plaintiff must plausibly plead "some direct relationship between the injuries that he or she suffered and the defendant's acts"). Because it fails to plead both injury and proximate causation, the Complaint's ATA claim must be dismissed.

### 3. Plaintiff's claim for direct liability fails because he does not and cannot plead that the creation of the Ad Library was an act of international terrorism

Plaintiff makes clear that his claim against Facebook under the ATA is for primary (direct) liability under 18 U.S.C. § 2333(a) and not one for secondary (indirect) liability under 18 U.S.C. § 2333(d). *See* Opp'n Br. at 11 ("Plaintiff requests relief under 18 U.S.C. § 2333(a)). As a result, to state a claim for primary liability, Plaintiff must plausibly plead that Facebook's *own* actions constituted international terrorism. *Cf. Linde v. Arab Bank*, 882 F.3d 314, 328 (2d Cir. 2018) (under a theory of aiding and abetting terrorism, defendant's own actions would *not* have to satisfy the definition of international terrorism under 18 U.S.C. § 2331(1)). Plaintiff has failed to do so.

For purposes of the ATA, international terrorism is expressly defined in 18 U.S.C. §2331(1) as activities that satisfy three requirements. *First*, the activities must "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States." *Second*, the acts must appear to be intended to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a

3

government by mass destruction, assassination, or kidnapping." *Third*, the action must "occur primarily outside the territorial jurisdiction of the United States."

As an initial matter, Plaintiff does not offer—and, indeed, cannot offer—any plausible allegations that Facebook's creation of the Ad Library satisfies the second or third requirements for any activity to constitute international terrorism as listed above. This, in and of itself, is a reason to dismiss Plaintiff's first cause of action with prejudice.

As for the first requirement, Plaintiff appears to argue that Facebook's creation of the Ad Library constitutes a criminal act under 18 U.S.C. § 2339A or § 2339B. Those statutory provisions make it a criminal act to provide material support to terrorists or terrorist organizations. But Plaintiff fails to plausibly plead the requirements under those statutes either. *First*, Plaintiff has failed to plausibly plead that Facebook has provided any support. He asserts in his Opposition brief that the Ad Library amounts to "expert advice and assistance" but neither the Opposition brief nor, more importantly, the Complaint contains any explanation why. *Second*, he fails to plead, as he must, that Facebook created the Ad Library "knowing or intending" that it would be used in the preparation or carrying out of any terrorist act.

Because Plaintiff has not pled anything to establish that Facebook's creation of the Ad Library was an act of international terrorism, his claim for primary (direct) liability under 18 U.S.C. §2333(a) must be dismissed with prejudice.

### 4. Plaintiff fails to state a claim for indirect or secondary liability

As explained above, it appears Plaintiff is only pursuing a claim for direct liability. But even if Plaintiff is also pursuing a claim for secondary liability, that too must be dismissed with prejudice. Facebook explained in its opening brief why Plaintiff failed to state a claim for secondary liability. *See* Mot. To Dismiss at 6. Plaintiff failed to respond to these arguments.

4

### B. Plaintiff fails to state a claim for copyright infringement

Plaintiff's copyright claim must be dismissed because Plaintiff has failed to satisfy the statutory requirement that he register his work with the Copyright Office prior to filing a suit for infringement. Plaintiff does not dispute that he has not registered his work; instead, his principal argument is that registration is not required. See Opp'n Br. at 16. Plaintiff is incorrect. 17 U.S.C. § 411(a) specifically provides that, apart from statutory exceptions not applicable here, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." The Supreme Court reaffirmed the necessity of securing a copyright registration this past March in *Fourth Estate Public Benefit Corp. v. Wall-Street.com:*

> Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that "registration of the copyright claim has been made." § 411(a). Therefore, although an owner's rights exist apart from registration, see § 408(a), registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights.

139 S. Ct. 881, 887 (2019).

### C. Plaintiff fails to state a civil rights claim under 42 U.S.C. § 1985

Plaintiff provides nothing but conclusory assertions in defense of his civil rights claim under 42 U.S.C. § 1985(3). As explained in Facebook's opening brief, there are no factual allegations that plausibly establish any conspiracy between Facebook, Google, and Twitter. Plaintiff disagrees and points to paragraphs 60 and 90-92 of his Complaint. But those paragraphs merely allege that Plaintiff attempted to run ads on Facebook, Google, and Twitter and was unable to do so. The mere fact that Plaintiff could not run ads on these platforms does not imply an agreement of any sort between Google, Twitter, and Facebook, much less an agreement to target Plaintiff in particular.

Next, Plaintiff's claim must be dismissed because there is no allegation of racial animus, as there must be in the Fifth Circuit.[1] Plaintiff offers little in response other than to assert that "Facebook has multiple kinds of animus" that will "be discovered in the lawsuit." But the mere filing of a complaint is not a license to engage in a costly discovery expedition. The complaint must contain allegations sufficient to state a claim that pass Rule 11 muster. The Complaint does not and must be dismissed as a result.

Finally, Plaintiff's claim must be dismissed because there are no allegations demonstrating state action. Plaintiff responds by citing an article mentioning that Facebook is "engaged" with various government agencies to detect and stop foreign misinformation campaigns in U.S. elections. This does not make Facebook a "state actor," and Plaintiff cites no caselaw suggesting otherwise. Even if he did, Plaintiff never establishes how Facebook is a state actor with respect to the two allegations at issue in this lawsuit—Facebook's creation of the Ad Library and Facebook's alleged decision not to run Plaintiff's ads. Because there is no allegation of state action, Plaintiff's civil rights claim must be dismissed. *See United Bhd. of Carpenters and Joiners of Am., Local 610 v. Scott*, 463 U.S. 825 (1983) (there can be no claim under Section 1985(3) for violations of First Amendment rights unless there is a showing of state involvement).

### III. THE LAWSUIT SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Although Facebook has moved this Court to dismiss Plaintiff's Complaint with prejudice, if the Court is not inclined to do so, Facebook requests, in the alternative, for this lawsuit to be transferred to the United States District Court for the Northern District of California. Plaintiff

---

[1] *Chaney v. Races & Aces,* 590 F. App'x 327, 330 (5th Cir. 2014); *Johnson ex rel. Wilson v. Dowd,* 305 F. App'x 221, 224 (5th Cir. 2008); *Horaist v. Doctor's Hosp. of Opelousas,* 255 F.3d 261, 271 (5th Cir. 2001); *Newberry v. E. Tex. State Univ.,* 161 F.3d 276, 281 n.2 (5th Cir. 1998).

1355608

offers several arguments opposing transfer. But as explained below, none of them withstands scrutiny.

### A. Plaintiff and Facebook entered into an enforceable contract

Plaintiff alleges he never entered into a contract with Facebook and Facebook's evidence to the contrary is merely legal conclusions. Opp'n Br. at 6-7. In fact, Facebook has provided competent evidence—a declaration explaining the user interface Plaintiff would have confronted when he posted his ads, the fact the interface would have informed Plaintiff that the decision to publish his ad amounted to an agreement to abide by Facebook's Terms of Use, and a hyperlink to the Terms of Use itself. *See* Declaration of Nicholas Wong in Support of Defendant's Motion to Transfer. These are facts, not legal conclusions. Courts in California[2] and Texas[3] have found enforceable contracts under similar circumstances. Plaintiff offers no evidence whatsoever to rebut Facebook's evidence. Consequently, the only evidence before this Court points in one direction: Plaintiff and Facebook entered into an enforceable contract.

### B. The contract is not unconscionable or illegal

Plaintiff argues the contract is illegal because it is a contract of adhesion. Putting aside whether the contract is one of adhesion—something Facebook contests—even if it were that would

---

[2] *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (upholding agreement where, directly above an orange button labeled "PLACE ORDER," website stated that "[b]y clicking Place Order below, you are agreeing that you have read and understand" the terms of service). *See also Nguyen v. Barnes & Noble, Inc.*, 763 F. 3d 1171, 1175, 1176-77 (9th Cir. 2014); *Flores v. Uber Tech.,* 2018 WL 5937253, at *4 (C.D. Cal. Sept. 5, 2018); *Nevarez v. Forty Niners Football Co., LLC,* 2017 WL 3492110, at *2, *8 (N.D. Cal. Aug. 15, 2017).

[3] *Southwest Airlines v. Boardfirst, LLC*, 2007 U.S. Dist. LEXIS 96230, 17-22 (N.D. Tex. 2007); *Bongalis-Royer v. RJ Worldwide, LLC*, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015) (enforcing clickwrap agreement where "referenced provisions [were] immediately available at the stage of assent" via hyperlink).

not stand in the way of its enforceability in California[4] or Texas.[5] Plaintiff also suggests that the contract is illegal because it "forces users into involuntary servitude." Opp'n Br. at 7. Presumably, Plaintiff is referring to the fact that the Terms include a provision providing Facebook with a license to display content uploaded by users. Plaintiff never explains why this constitutes "servitude," especially considering the fact the users like Plaintiff have the unilateral power to terminate the license by deleting their content or their account. *See* Wong Decl. Exh. A, § 3.1; Exh. B, § 3.1.

### C. Plaintiff is presumed to have read the contract and the documents it incorporates

Contracts are enforceable in both California[6] and Texas[7] irrespective of whether one of the parties elects not to read the contract itself. And although Plaintiff complains that the contract is confusing to him given the fact it incorporates, by reference, additional documents—the contract provision at issue here—the forum selection clause—is contained in the Terms of Service itself, not another contract document.

### D. This lawsuit is encompassed within the forum selection clause

Plaintiff asserts that his lawsuit falls outside the scope of the forum selection clause. But all of Plaintiff's claims arise from his use of the Facebook platform and hence arise from his use of a Facebook product. *See* Wong Decl. Exh. A, § 4 and preface (forum selection clause governs claims arising out of or relating to Facebook's Terms or Facebook's Products, where Facebook

---

[4] *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165 (Cal. 1981).

[5] *In re Lyon Fin. Servs., Inc.*, 257 S.W. 3d 228 (Tex. 2008).

[6] *Stewart v. Preston Pipeline Inc.*, 36 Cal. Rptr. 3d 901, 921 (Cal. Ct. App. 2005).

[7] *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (party is assumed to have read a contract, including documents specifically incorporated by reference); *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, 2010 WL 445927, at *3 (N.D. Tex. Feb. 9, 2010) (quoting *In re Cajun Elec. Power Coop., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986)).

Products are defined as the products, features, apps, services, technologies, and software that Facebook offers); Exh. B, § 4 and preface (same).

Because Plaintiff entered into an enforceable contract whereby he agreed to litigate any dispute against Facebook in California, this lawsuit should be transferred to the United States District Court for the Northern District of California.

## IV. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss this Complaint with prejudice, or alternatively, that the Court transfer this case to the United States District Court for the Northern District of California.

Respectfully submitted,

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.
Texas Bar Number 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**ATTORNEY FOR FACEBOOK INC.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document was served on the pro se Plaintiff (who has consented to electronic service and obtained the Court's permission to participate in the courts electronic filing and service system) via the Court's CM/ECF system pursuant to Local Rule CV-5 on November 18, 2019.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.